GARY A. DAVIS (SBN 098792)
Davis & Whitlock, P.C.
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Tel: (828) 622.0044; Fax: (828) 398.0435
Email: gadavis@enviroattorney.com

JAMES M. BIRKELUND (SBN 206328)
Law Offices of James Birkelund
548 Market St., # 11200
San Francisco, CA 94105
Tel: (415) 602.6223; Fax: (415) 789.4556
Email: james@birkelundlaw.com

RACHEL S. DOUGHTY (SBN 255904)
Greenfire Law
1202 Oregon Street
Berkeley, CA 94702
Tel: (828) 424.2005
Email: rdoughty@greenfirelaw.com

Attorneys for Plastic Pollution Coalition,
a project of Plaintiff Earth Island Institute

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLASTIC POLLUTION COALITION, a project of EARTH ISLAND INSTITUTE, a non-profit organization,<br><br>          Plaintiff,<br><br>v.<br><br>TE CONNECTIVITY *dba* TYCO ELECTRONICS CORPORATION, TE CONNECTIVITY NETWORKS, and TE CIRCUIT PROTECTION,<br><br>          Defendants. | Case No.   3:15-cv-3658<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.*) |

COMPLAINT                              1                    U.S. DISTRICT COURT

Plaintiff Plastic Pollution Coalition, a project of Earth Island Institute ("Plastic Pollution Coalition"), alleges as follows:

## NATURE OF THE CASE

1.    This is a citizen's suit brought pursuant to the federal Clean Water Act ("CWA" or "Act") to abate Defendant's poor practices of dumping pollutants into storm water that ultimately discharges into the San Francisco Bay and to prevent Defendant's other violations of the Act.

2.    Defendant TE Connectivity *dba* Tyco Electronics Corporation, TE Connectivity Networks, Inc., and TE Circuit Protection (collectively, "TE Connectivity") is a major commercial producer of preproduction plastics for other manufacturers.  TE Connectivity's industrial facility located at 300 Constitution Drive in Menlo Park, California (the "Facility") is located across the San Francisco Bay (the "Bay") and in close proximity to the Don Edwards San Francisco Bay National Wildlife Refuge.

3.    TE Connectivity has demonstrated a consistent disregard of its obligations under the CWA and willingness to pollute our waterways.  The corporation has illegally discharged pollution into waters of the United States, including sensitive estuarine waters. In addition, TE Connectivity's deficient monitoring and reporting of its industrial activities under the CWA has resulted in plaintiff's members being unable to know the full extent of pollution discharged to the public waterways, inhibiting their use and enjoyment thereof.

4.    Since at least June 4, 2010, TE Connectivity has failed to comply with the requirements of the State of California's Storm Water Permit,[1] which is designed to prevent discharges of pollutants, including the monitoring, reporting,

_____

[1] The "Storm Water Permit" or "Permit," as referenced herein, refers to California's General Industrial Permit for storm water discharges, adopted by the State Water Resources Control Board ("State Board") Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ and Water Quality Order No. 97-03-DWQ, NPDES General Permit No. CAS000001.

COMPLAINT                            2                    U.S. DISTRICT COURT

and revision of storm water management practices as necessary. TE Connectivity's failures to comply with the discharge, best management technology, monitoring requirements, and other procedural and substantive requirements of the Permit, in violation of 33 U.S.C. § 1311(a) of the Act, are ongoing and continuous.

5.     The failure on the part of corporations such as TE Connectivity and its Facility to comply with storm water requirements is recognized as a significant cause of the continuing decline in water quality of the Bay and other area receiving waters. The general consensus among regulatory agencies and water quality specialists is that storm pollution amounts to a substantial portion of the total pollution entering the aquatic environment each year. Storm water from the Facility flows with inadequate treatment through storm drain systems or other channels to the Bay and waters of the United States.

6.     Plastic Pollution Coalition seeks relief to force TE Connectivity to comply with the CWA and California's Storm Water Permit and to protect human health and the environment in the San Francisco Bay area. Plaintiff seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and an award of costs (including attorney and expert fees) for TE Connectivity's repeated, continuous, and ongoing violations of the CWA.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over the CWA claims set forth in this Complaint pursuant to 33 U.S.C. § 1365(a) (actions arising under the CWA) and 28 U.S.C. § 1331 (federal question jurisdiction).

8.     Plaintiff has complied with the pre-suit notice provisions of the CWA. Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plastic Pollution Coalition, on June 4, 2015, mailed a notice of intent to file suit under the CWA to address the violations at the Facility to: TE Connectivity, the U.S. Attorney General, the Administrator of the U.S. Environmental Protection Agency

("EPA"), the Regional Administrator of the EPA, the Executive Director of the California State Water Resources Control Board ("State Board"), and the Acting Executive Director of the San Francisco Bay Regional Water Quality Control Board ("Regional Board") ("60-Day Notice"). The 60-Day Notice complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A. More than 60 days have passed since the 60-Day Notice was served on TE Connectivity and these agencies. A true and correct copy of the notice is attached as Attachment A, and is fully incorporated by reference herein.

9.      On information and belief, neither the EPA nor the State Board nor the Regional Board ("Public Enforcers") has commenced, nor is any one of the Public Enforcers diligently prosecuting, a civil or criminal action in a court of the United States to redress the violations of the CWA by TE Connectivity. In addition, none of the Public Enforcers has commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or under a comparable California law, to redress the violations of the CWA by TE Connectivity.

10.     Plastic Pollution Coalition will, immediately upon receipt of a file stamped copy of this Complaint, mail a copy of this Complaint to each of the Public Enforcers and the Attorney General of the United States.

11.     Venue is appropriate in the Northern District of California, pursuant to Section 505(c) of the CWA, 33 U.S.C. § 1365(c), because the source of the violations is located in San Mateo County within this judicial district.

12.     This action arising in San Mateo County is appropriately assigned to the Northern Division.

## THE PARTIES

13.     Earth Island Institute is a not-for-profit, public interest, membership organization that supports people who are creating solutions to protect our shared planet and with a mission to protect the environment. Plastic Pollution Coalition is

1    a project of Earth Island Institute and consists of a global alliance of individuals,

2    organizations, and businesses working towards a world free of plastic pollution

3    and its toxic impacts. Earth Island Institute and Plastic Pollution Coalition are

4    both headquartered in California.

5        14.    Plaintiff has standing to bring this lawsuit because its members work,

6    recreate, and/or live on or near the San Francisco Bay that TE Connectivity is

7    discharging into. These members have been, and will continue to be, directly and

8    substantially injured in their use and enjoyment of their property and/or in their

9    recreational and aesthetic enjoyment of the San Francisco Bay Basin and wildlife

10   refuges as a direct result of TE Connectivity's violations of the CWA. The relief

11   sought in this case would provide redress for these injuries. Additionally, because

12   these injuries are being caused by pollution of waters of the United States and

13   failure to adequately monitor and report discharges of pollutants from the Facility,

14   the injuries fall within the zone of interests protected by the CWA. Defendants

15   continuing commission of the acts and omissions alleged above will irreparably

16   harm Plaintiff and its members, for which harm they have no plain, speedy, or

17   adequate remedy at law.

18       15.    On information and belief, TE Connectivity Network is a California

19   corporation operating in the State of California with a facility doing business and

20   operating under the name of Tyco Electronics Corp. in the County of San Mateo.

21                                **LEGAL FRAMEWORK**

22       16.    The objective of the CWA is to restore and maintain the "chemical,

23   physical and biological integrity of [the] Nation's waters." 33 U.S.C. § 1251(a). In

24   accordance with that objective, Section 301(a) of the CWA, 33 U.S.C. § 1311(a),

25   prohibits the discharge of any pollutant into waters of the United States, unless

26   such discharge is in compliance with various enumerated sections of the Act.

27       17.    The Act establishes a permitting framework for regulating industrial

28   and municipal storm water discharges known as the National Pollution Discharge

Elimination System ("NPDES") permit program. 33 U.S.C. § 1342(b). Section 301(a) of the Act makes the discharge of any pollutant by any corporation or person unlawful, unless in compliance with a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

18.    The State of California has been delegated the authority by EPA to implement the permitting programs of the CWA, including the NPDES permit. The State Water Resources Control Board is the water pollution control agency for purposes of the CWA, and has drafted regulations pursuant to that authority implementing the CWA's permitting programs within the State of California.

19.    To implement the CWA's permitting program for discharges of storm water associated with industrial activities, including containment of pre-production plastic, the State Board has adopted California's Storm Water Permit.[2]

20.    In order to discharge storm water lawfully in California, a party must comply with the terms of the Permit (or have obtained an individual NPDES permit). 33 U.S.C. § 1311(a). Thus, the right of industrial facilities to discharge storm water in California is a privilege granted only in strict accordance with permit conditions.

21.    The term "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Pollutants are defined to include, among other examples, industrial waste, chemical wastes, biological materials, heat, rock, and sand discharged into water.

---

[2] All future references unless otherwise specified are to the Storm Water Permit.

The State Board has issued a new General Industrial Permit for Storm Water Discharges: Order No. 2014-0057-DWQ ("2015 Storm Water Permit"). The 2015 Storm Water Permit is as or more stringent than the existing Storm Water Permit. For example, the 2015 Storm Water Permit will require monthly observation of storm water drainage areas throughout the year, will double the number of sampling requirements, continues to require preparation of a Storm Water Pollution Prevention Plan, prohibits non-storm water discharges, and explicitly addresses storm water management for pre-production plastic dischargers.

33 U.S.C. § 1362(6).

22.    The Permit has several prohibitions and mandates. Industrial dischargers are:

23.    prohibited from discharging any storm water or authorized non-storm water that causes or threatens to cause pollution, contamination, or nuisance;

24.    prohibited from discharging storm water to any surface or ground water that adversely impacts human health or the environment;

25.    prohibited from discharging storm water that causes or contributes to an exceedance of any applicable water quality standard contained in the Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan; and

26.    required to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  BAT and BCT include both nonstructural and structural measures.

27.    In addition to absolute prohibitions, the Storm Water Permit has variety of procedural requirements:

28.    <u>Storm Water Pollution Prevention Plan</u>.  Industrial facilities must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that complies with the requirements in Section A of the Permit. The SWPPP must, among other requirements, identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site specific best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges. The SWPPP's BMPs must implement BAT and BCT. The SWPPP must include: a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection,

conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity; a list of significant materials handled and stored at the site; a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, and a description of significant spills and leaks, a list of all non-storm water discharges and their sources. The SWPPP must include an assessment of potential pollutant sources at the Facility and a description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective. The SWPPP must be evaluated to ensure effectiveness and must be revised where necessary.

29.     <u>Monitoring and Reporting</u>. Facilities must perform monitoring of storm water discharges and authorized non-storm water discharges with a facility-specific Monitoring and Reporting Program ("MRP"). The purpose of the MRP is to ensure compliance with the terms of the Storm Water Permit, monitor changing conditions, aid in implementation and revision of the SWPPP, and to measure the effectiveness of BMPs in use at the Facility. Diligent implementation of a rigorous MRP is critical to CWA compliance and enforcement. Both agency enforcers and citizens rely heavily on accurate monitoring and reporting to stay apprised of pollution conditions, to monitor implementation of the CWA, and for enforcement where violations are shown. As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented. Dischargers must conduct visual observations of these discharge locations and record their findings in their Annual Report. In addition, dischargers must collect and analyze storm water samples

from all storm water discharge locations and analyze them for basic parameters (pH, total suspended solids, electrical conductance, and total organic content or oil & grease), certain industry-specific parameters, and any toxic chemicals and other pollutants that are likely to be present. These visual observations and samples must represent the quality and quantity of the facility's storm water discharges.

30.    <u>Annual Evaluations</u>.  Dischargers must conduct annual evaluations of storm water controls including the preparation of an evaluation report and implementation of any additional measures in the SWPPP to respond to the monitoring results and other inspection activities.

31.    <u>Annual Report</u>.  The Permit requires that each discharger submit an annual report by July 1 of each year to the Regional Board. The annual report must be signed and certified by an appropriate corporate officer. The Permit requires the discharger to include in the annual report an evaluation of storm water controls, including certifying compliance with the Permit.

32.    Relevant to the foregoing, the EPA has established benchmarks for pollutant discharges ("EPA Benchmarks"), which serve as the parameters to determine if a facility is properly implementing safeguards and procedures to prevent unlawful discharges. The EPA Benchmarks are relevant and objective standards to evaluate whether a facility has implemented the requisite BAT and BCT. The following benchmarks have been established for pollutants discharged, or likely discharged, by TE Connectivity: Total Suspended Solids (TSS) - 100 mg/L, Oil and Grease (O&G) - 15.0 mg/L, pH - 6-9 s.u., Aluminum - 0.75 mg/L, Antimony - 0.636 mg/L, Copper - 0.0636 mg/L, Iron - 1.0 mg/L, Lead - 0.816 mg/L, Magnesium – 0.0636 mg/L, and Zinc - 0.117 mg/L.  Environmental Protection Agency, Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (2009) ("MSGP"); *see also Baykeeper v. Int'l Metals Ekco, Ltd.*, 619 F.Supp.2d 936, 945 (C.D. Cal. 2009) ("[t]here can be no reasonable dispute that the Benchmarks are relevant to the inquiry as to whether a

facility implemented BMPs"); *Waterkeepers Northern California v. AG Industrial Mfg. Inc.*, 375 F.3d 913, 919 n.5 (9th Cir. 2004) (plaintiff appropriately pointed to EPA benchmark values "as evidence to support its claim that [the defendant] failed to implement adequate BMPs").

33.     Noncompliance with any of the requirements of the Permit constitutes a violation of the CWA and California's Porter-Cologne Water Quality Control Act. Water Code § 13160.

34.     Any citizen may bring legal action against a violator of the Act to enforce the terms and conditions of the Permit.  Section 505(a)(l) and Section 505(f) of the Clean Water Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements. 33 U.S.C. §§1365(a)(l) and (f), § 1362(5). An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day per violation for all violations occurring after January 12, 2009, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365; *see also* 40 C.F.R. §§ 19.1 - 19.4.

## STATEMENT OF FACTS

35.     TE Connectivity has been operating the Facility at its present location since at least 2001. The company certifies in its Notice of Intent to comply with the Storm Water Permit that it is classified under Standard Industrial Code (SIC) code 3089 (Plastic Products), 3082 (Unsupported Plastics Profile Shapes), and 2821 (Plastics Materials, Synthetic Resins, and Nonvulcanizable Elastomers).

36.     TE Connectivity engages in extensive manufacturing of preproduction plastics at the Facility. TE Connectivity manufactures preproduction plastics for other manufacturers, including pellets, strands, and sheets from polyethylene (the most common industrial form of plastic), as well as plastic tubing and molded parts. It also manufactures polymer-based circuit protection devices with a

production process that includes plastics compounding, plastics extrusion, lamination with metallic foil, punching, soldering, and resin coating. TE Connectivity's manufacturing processes involve the use of carbon black and nickel polymers, nickel and copper metals, solder, zinc and antimony oxides and polymers, glycerin, cleaning solvents, and solvent-based inks.

37.    TE Connectivity's industrial activities result in pollutants and it is required to report under, and comply with, the Storm Water Permit. Storm water-exposed industrial operations at the Facility include pallets, outdoor storage areas (including of hazardous waste), recycling areas and activities, and the discharge of industrial vapors through roof vents, stacks, and blowers.

38.    TE Connectivity collects and discharges storm water from its Facility into drains that flow into the San Francisco Bay.

39.    Management practices at the Facility fail to adequately monitor storm water discharges and do not prevent the discharge of pollutants to the waters of the United States. The information relied on herein includes data gathered from TE Connectivity's self-monitoring reports submitted to the Regional Board during the 2010-2011, 2011-2012, 2013-2014, and 2014-2015 wet seasons.

40.    In the last five years, TE Connectivity has taken and arranged for samples to be taken of storm water discharges at the Facility. The sample results were reported in the Facility's annual reports submitted to the Regional Board. TE Connectivity certified the accuracy of each of those annual reports.

41.    In the last five years, TE Connectivity has reported zinc, TSS, pH, and specific conductance in excess of EPA parameter benchmarks. *See* Attachment A, Exh. A.

42.    The reported level of zinc has exceeded the benchmark value of 0.117 mg/L dozens of times over the past five years, with levels as high as 4.5 mg/L reported – *more than 35 times higher than the EPA benchmark value.*

43.    Reported TSS in storm water at the Facility has exceeded the

benchmark value of 100.0 mg/L established by EPA on numerous occasions reaching levels as high as 250 mg/L.

44. The reported pH level in storm water detected by the Facility violated the benchmark value for pH of 6-9 s.u. established by EPA.

45. Over the past five years, TE Connectivity has sampled from only four distinct drainage points at the Facility. In its most recently updated SWPPP, TE Connectivity proposes to sample from only two locations. On information and belief, TE Connectivity has failed, and continues to fail, to take samples from all storm water discharge locations at the Facility.

46. Since at least June 4, 2010, and continuing until the present, TE Connectivity failed to test for nickel, aluminum, copper, iron, magnesium, lead, antimony trioxide, and triallyl isocyanurate even though these constituents are likely to be in storm water discharges and so must be monitored.

47. Notwithstanding the foregoing, TE Connectivity has not tested storm water discharges for nickel, aluminum, copper, iron, magnesium, lead, antimony trioxide, and triallyl isocyanurate during the 2010-2011, 2012-2013, 2013-2014, or 2014-2015 wet seasons.

48. In the 2010-2011 wet season, TE Connectivity failed to sample two rain events, and to sample the first rain event of the year.

49. TE Connectivity's current SWPPP as of the filing of this complaint (dated June 30, 2015) is not compliant with the Storm Water Permit.  The new SWPPP is deficient on its face because, among other things, it fails to require testing of all likely parameters in the Facility's storm water discharge, fails to require monitoring and sampling from all discharge locations, and lacks sufficient detail on drainage systems, sumps, and flow directions.

50. For the last five years and continuing into the present, TE Connectivity has not implemented an adequate SWPPP, and Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does

not yet meet the Permit requirements.

51.     As a result of these practices (discussed above), storm water containing pollutants is being discharged from the Facility in violation of the Storm Water Permit, both from the drainage area being monitored and from the other unobserved and unsampled drainage areas. These pollutants from the Facility flow into the County of San Mateo storm drain system and discharge ultimately into the San Francisco Bay and other Waters of the U.S.

52.     TE Connectivity has not fulfilled the requirements set forth in the Permit for discharges from the Facility due to the continued discharge of contaminated storm water and failure to appropriately monitor and sample storm water and timely report its findings. Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

## CLAIMS FOR RELIEF

53.     All claims for relief incorporate all of the preceding paragraphs and the other claims herein below.

## FIRST CAUSE OF ACTION

### Discharges of Pollutants without a Permit
### (Violations of Permit Conditions and CWA, 33 U.S.C. §§ 1311(a), 1342)

54.     The Clean Water Act, Section 301, makes unlawful "the discharge of any pollutant by any person," unless in compliance with a permit. 33 U.S.C. §§ 1311(a), 1342.

55.     California's Storm Water Permit regulates storm water from the Facility and prohibits discharges of materials other than storm water directly or indirectly to waters of the United States.

56.     Every day since June 4, 2010, that TE Connectivity discharged storm water, it discharged materials other than storm water from the Facility in violation

of the Permit. Each such discharge is a separate and distinct violation of Section 301(a) and Section 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342. These violations are ongoing and continuous.

### **SECOND CAUSE OF ACTION**

**Failure to Prepare, Update, and Implement an
Adequate Storm Water Pollution Prevention Plan
(Violations of Permit Conditions and CWA, 33 U.S.C. §§ 1311, 1342)**

57.	The Storm Water Permit requires dischargers of storm water associated with industrial activity to develop and implement an adequate SWPPP.

58.	The Storm Water Permit requires each industrial facility to implement effective best management practices, to comprehensively monitor its storm water to monitor the effectiveness of the selected best management practices, and to promptly revise and improve its SWPPP when monitoring indicates best management practices have failed.

59.	TE Connectivity has not developed and implemented an adequate SWPPP for the Facility, as demonstrated by the chronic failure of TE Connectivity's reported storm water samples to achieve the EPA's benchmarks and as discussed further in paragraphs 33-41 above.

60.	Each day since June 4, 2010 that TE Connectivity has failed to develop and implement an adequate SWPPP for the Facility consistent with the requirements of the Permit is a separate and distinct violation of Section 301(a) and Section 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342. These violations are ongoing and continuous.

## THIRD CAUSE OF ACTION

**Failure to Develop and Implement an
Adequate Monitoring and Reporting Programs
(Violations of Permit Conditions and CWA, 33 U.S.C. §§ 1311, 1342)**

61.     The Permit requires each discharger of storm water associated with industrial activity to develop and implement a Monitoring and Reporting Program, which includes requirements for sampling and analysis of storm water discharges.

62.     TE Connectivity has not developed and implemented an adequate Monitoring and Reporting Program for the Facility, as evidenced, by among other things, the corporation's failure to monitor and timely sample its storm water for all likely pollutants being discharged from each storm water discharge location from the Facility, and as discussed in paragraphs 33-41 above.

63.     Each day since June 4, 2010 that TE Connectivity has failed to develop and implement an adequate MRP for the Facility consistent with the requirements of the Permit is a separate and distinct violation of Section 301(a) and Section 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342. These violations are ongoing and continuous.

## FOURTH CAUSE OF ACTION

**Failure to Implement the Best Available and Best Conventional Treatment
Technologies
(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

64.     The Permit and SWPPP require each discharger to reduce or prevent pollutants in its storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants. Defendant has failed to implement BAT and BCT at the Facility, resulting in discharges of pollutants in violation of the Permit, as evidenced by TE Connectivity's ongoing exceedances of EPA Benchmarks.

65.     Each day since Defendant began operations at the Facility that Defendant has failed to develop and implement BAT and BCT in violation of the Permit is a separate and a separate and distinct violation of Section 301(a) and Section 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342. These violations are ongoing and continuous.

## FIFTH CAUSE OF ACTION

### False Certification of Compliance in Annual Report
### (Violations of Permit Conditions and the CWA, 33 U.S.C. §§ 1311, 1342)

66.     TE Connectivity has not accurately certified compliance with the Storm Water Permit in each of the Annual Reports submitted to the Regional Board since June 4, 2010.

67.     Each day since at least June 4, 2010 that TE Connectivity did not accurately certify compliance with the Permit is a separate and distinct violation of Section 301(a) and Section 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342. These violations are ongoing and continuous.

### RELIEF REQUESTED

WHEREFORE, Plastic Pollution Coalition respectfully request that the Court grant the following relief:

a.     Enter a declaratory judgment that TE Connectivity has violated the CWA;

b.     Enjoin TE Connectivity from discharging storm water containing pollutants in violation of the 2015 Storm Water Permit;

c.     Order TE Connectivity to comply with all terms and conditions of coverage of the 2015 Storm Water Permit, including by immediately preparing a SWPPP and MRP consistent with the 2015 Storm Water Permit's requirements, and to implement procedures to regularly review and update the SWPPP and MRP;

d.      Order Defendant TE Connectivity to pay civil penalties of up to thirty-seven thousand five hundred dollars ($37,500) per day for each day of each violation of the CWA set out in this Complaint, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. § 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1-19.4;

e.      Award Plaintiff its costs (including reasonable attorney, investigative, expert and witness fees, and compliance oversight costs) as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d);

f.      Grant such other and further relief as the Court deems just and appropriate.


Dated: August 11, 2015                JAMES M. BIRKELUND



                                                         By:/S/ Rachel S. Doughty
                                                         RACHEL DOUGHTY
                                                         Attorney for Plaintiff

                                                         GARY DAVIS, ESQ

                                                         JAMES M. BIRKELUND, ESQ